IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 23, 2013 at Knoxville

## RANDY CLAYTON NORMAN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Maury County**
**No. 16988     Jim T. Hamilton, Judge**

---

**No. M2012-01511-CCA-R3-PC - Filed August 28, 2013**

---

The Petitioner, Randy Clayton Norman, appeals the Maury County Circuit Court's denial of his petition for post-conviction relief from his conviction of second degree murder and resulting fifteen-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of trial and appellate counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Jacob J. Hubbell (on appeal), Columbia, Tennessee, and Ryan B. Feeny (at trial), Selmer, Tennessee, for the appellant, Randy Clayton Norman.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Larry Nickell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

This case relates to a fight that occurred between the Petitioner's daughter, April Norman, and the Petitioner's ex-wife, Gwendolyn Westmoreland, who was living with the Petitioner at the time of the crime. During the fight, the Petitioner killed Norman's boyfriend, Michael Fuller.

We glean the following relevant facts from this court's opinion of the Petitioner's

direct appeal of his conviction: On the night of January 10, 2007, Norman, Fuller, and their two young children went to the Petitioner's home for dinner. State v. Randy Clayton Norman, No. M2009-01246-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 723, at *2 (Nashville, Sept. 2, 2010), perm. to appeal denied, (Tenn. 2010). The Petitioner and Westmoreland were there, and the four adults consumed alcohol and prescription pills. Id. Norman and Westmoreland got into a physical altercation in a bedroom, and the Petitioner yelled for the victim to come into the room and stop the fight. Id. at **2-3. At trial, Norman testified that the victim was not yelling when he entered the bedroom and that he did not hurt her. Id. at *3. Regarding Westmoreland, Norman testified, "'I guess [the victim] had got over her, she said. I didn't see it." Id. Norman did not know if the victim hit Westmoreland or had a knife. Id. Norman said she previously had seen the Petitioner and the victim argue several times and fight physically. Id. Westmoreland testified that the victim screamed at her when he came into the bedroom but that he did not hurt her and that she "'[did not] recall him putting his hands on [her].'" Id. at **5-6.

In the Petitioner's statement to police, he claimed that he hit the victim with an axe because the victim was on top of Westmoreland, who was on the floor, and was hitting her with his fist. Id. at *12. At trial, the Petitioner testified that "'[the victim] had [Westmoreland] by the hair of the head, on his knees'" and that the victim "'was beating her head against the floor.'" Id. at *19. The Petitioner also testified that he saw the victim's right hand move back toward the victim's pocket and that he thought the victim was reaching for a knife in order to kill Westmoreland. Id. at **19-20. The Petitioner said he hit the victim with the axe because he had been in fights with the victim previously and physically "'couldn't handle [the victim].'" Id. at *20. The police found a closed pocketknife under the victim's body. Id. at *16.

Although the Petitioner had been indicted for first degree premeditated murder, the jury convicted him of the lesser-included offense of second degree murder, a Class A felony, and the trial court sentenced him to twenty years in confinement. Id. at *22. On appeal to this court, the Petitioner claimed that he received the ineffective assistance of trial counsel for counsel's failure to impeach and call witnesses, that the trial court failed in its responsibility as the thirteenth juror, that the evidence was insufficient to support the conviction because it failed to show he killed the victim knowingly, and that his sentence was excessive. See id. at **31-49. This court affirmed the Petitioner's conviction but concluded that the trial court misapplied the "exceptional cruelty" enhancement factor. Id. at *48. Given the lack of any other applicable enhancement factors, this court reduced the Petitioner's sentence to the minimum punishment in the range, fifteen years. Id. at *49.

The Petitioner timely filed a pro se petition for post-conviction relief. Relevant to this appeal, he claimed that he received the ineffective assistance of appellate counsel because

counsel failed to raise the "true man doctrine" in his sufficiency of the evidence claim. The Petitioner also claimed that appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective for failing to obtain telephone records to impeach Westmoreland at trial. The post-conviction court appointed counsel and conducted an evidentiary hearing.

At the hearing, the then fifty-seven-year-old Petitioner testified that trial counsel represented him through sentencing. He said that trial counsel was "a good man" but young and too inexperienced for a first degree murder trial. Gwendolyn Westmoreland had made telephone calls to her husband, Tony, who was in jail with the Petitioner. The Petitioner said Tony Westmoreland told him that Gwendolyn Westmoreland was "'going to get [the Petitioner] out. The DA didn't do what they supposed to.'" Two weeks before trial, the Petitioner asked trial counsel to get the recordings of jailhouse conversations between Gwendolyn, his ex-wife, and Tony, her husband. The Petitioner said that he wanted counsel to obtain the recordings because Gwendolyn Westmoreland had made "a deal" with the State "to get Tony out [of] jail for [her] testimony." However, trial counsel told the Petitioner that they did not have time to get the recordings. The Petitioner did not ask trial counsel to file a motion to continue the trial because he did not know he could do so. The Petitioner said that at trial, trial counsel "didn't push" Gwendolyn Westmoreland during cross-examination and asked her very few questions. The Petitioner's defense was that he was protecting her from the victim. However, trial counsel did not argue that defense to the jury. Regarding the true man doctrine, the Petitioner stated, "Well, the way I understand that is if you're in your house, you've got a right to protect your house and people in your house." Trial counsel did not argue the true man doctrine at trial.

The Petitioner testified that after his sentencing hearing, he retained new counsel for the filing of his motion for new trial. Appellate counsel continued to represent him on direct appeal after the trial court denied the motion. Appellate counsel failed to raise the true man doctrine in the sufficiency of the evidence argument to this court. The Petitioner acknowledged that appellate counsel was successful on direct appeal in that this court reduced his sentence. However, this court denied relief on the Petitioner's remaining issues. Appellate counsel filed an application for permission to appeal to our supreme court, but it was denied.

Trial counsel testified that he was appointed to represent the Petitioner and conducted the Petitioner's preliminary hearing. At the hearing, Gwendolyn Westmoreland testified that the victim was "rendering aid" to April Norman when the Petitioner killed the victim. Her testimony was inconsistent with the defense's theory that the victim was attacking Westmoreland, and trial counsel tried to negotiate a plea agreement with the State but was unsuccessful. Trial counsel said the Petitioner "thought something was amiss with the DA's

office concerning any kind of deal with Mr. Westmoreland." Trial counsel said that he talked with the assistant district attorney but that Tony Westmoreland "had pled guilty, or he was going to plead guilty, and they had a deal worked out." At trial, trial counsel cross-examined Gwendolyn Westmoreland but did not ask her if she was receiving anything from the State in exchange for her testimony. Post-conviction counsel asked trial counsel, "And given [the Petitioner's] concerns, looking back, do you believe that should have been inquired?" Trial counsel answered, "It might should have. . . . [B]ut I don't know about that specific issue, because again, I think [Mr. Westmoreland] already pled guilty." Trial counsel acknowledged that Gwendolyn Westmoreland was a "key witness" at trial. He said he did not ask her about a deal with the State because "it would just bolster her credibility to the jury in saying no consideration was given." Gwendolyn Westmoreland testified at the Petitioner's trial that the victim was on top of her and screaming at her when the Petitioner hit the victim, which was inconsistent with her preliminary hearing testimony.

Trial counsel testified that at the time of the Petitioner's trial, he had been practicing law for five years and had served as "second chair" in some murder and attempted murder cases. However, this was the first murder case he handled alone.

On cross-examination, trial counsel acknowledged that the jury convicted the Petitioner of second degree murder. He stated that he "thought we got it down to a manslaughter" but that the jury disagreed. This court concluded that the evidence was sufficient to support the second degree murder conviction.

Appellate counsel testified that the Petitioner's mother and sister retained him to represent the Petitioner after the Petitioner's sentencing hearing. Appellate counsel filed a motion for new trial and raised an ineffective assistance of counsel claim. He said that although raising the claim was "a really dangerous thing to do," he thought it was appropriate in this case because "the further away you get from the jury trial, the more difficult, and more burdensome, and more onerous it becomes upon the defendant to get a not guilty or get some relief." In the motion for new trial, appellate counsel alleged that trial counsel was ineffective for failing to obtain telephone records from the Maury County Jail regarding conversations between Gwendolyn and Tony Westmoreland. However, appellate counsel did not raise the issue on appeal to this court because it was not a "killer issue." Appellate counsel raised sufficiency of the evidence on appeal but did not address the true man doctrine. He said that, instead, he focused on whether the Petitioner knowingly killed the victim. He said the record supported both arguments. He stated that failing to include the true man doctrine was error but that "I don't know what the end result would have been." Appellate counsel said that he thought he adequately represented the Petitioner and that "I don't know of anything that I could have done different to have improved his chances even with the True Man Doctrine."

On cross-examination, appellate counsel acknowledged that this court denied relief on the Petitioner's ineffective assistance of counsel claim. He also acknowledged that this court concluded that the evidence was sufficient to support the Petitioner's conviction for second degree murder.

In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding appellate counsel's failure to argue the true man doctrine in his sufficiency of the evidence argument on appeal, the post-conviction court stated, "The True Man Doctrine was addressed by the Court of Criminal Appeals." Regarding trial counsel's being ineffective for failing to obtain the telephone records for Gwendolyn and Tony Westmoreland's jailhouse telephone conversations, the court determined that the Petitioner's claim "must fail because there is not evidence that such records existed. Nor is there proof that a reasonable probability exists that the outcome of the appeal would have been different."

## II. Analysis

The Petitioner contends that he received the ineffective assistance of appellate counsel because appellate counsel "failed to raise the issue of True Man Doctrine in his brief when arguing that the evidence was insufficient to support the jury's verdict." The Petitioner also contends that he received the ineffective assistance of trial counsel because trial counsel failed to introduce evidence of Gwendolyn Westmoreland's testifying for the State in return for favorable treatment for her husband, who was in jail for an unrelated criminal case. The State argues that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See

State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Regarding the Petitioner's claim that appellate counsel was ineffective for failing to raise the true man doctrine in the direct appeal of his convictions, our supreme court has explained, "Under the 'true man' doctrine, one need not retreat from the threatened attack of another even though one may safely do so. Neither must one pause and consider whether a reasonable person might think it possible to safely flee rather than to attack and disable or kill the assailant." State v. Renner, 912 S.W.2d 701, 704 (Tenn. 1995). Tennessee's law of self-defense in the use of deadly force, Tennessee Code Annotated section 39-11-611(b)(2), adheres to the true man doctrine, specifying that

> a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:
>
> (A) The person has a reasonable belief that

there is an imminent danger of death or serious
bodily injury;

       (B) The danger creating the belief of
imminent death or serious bodily injury is real, or
honestly believed to be real at the time; and

       (C) The belief of danger is founded upon
reasonable grounds.

See id. at 703-04.

Turning to the instant case, our review of the instructions shows that the court charged the jury on the applicable statutes of self-defense and defense of a third person, including the provisions that "[t]here is no duty to retreat before a person threatens or uses force" and that the principles of self-defense apply to the defense of another. The jury rejected the Petitioner's defenses. Thus, we conclude no merit exists in his argument that appellate counsel rendered deficient performance for failing to raise the true man doctrine on appeal to this court or that he was prejudiced by any deficiency.

Regarding the Petitioner's claim that trial counsel was ineffective for failing to obtain recordings or records for Gwendolyn and Tony Westmoreland's jailhouse conversations, the Petitioner already argued the ineffective assistance of trial counsel in the direct appeal of his conviction. Therefore, the issue has been previously determined and cannot be relitigated. Laraiel Winston v. State, No. E2011-00762-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 53, at **24-25 (Knoxville, Jan. 31, 2012). Regardless, the Petitioner failed to present the records or recordings at the evidentiary hearing or have Gwendolyn Westmoreland testify about any agreement she had with the State. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the witness might have offered to the Petitioner's case. Therefore, the Petitioner has failed to show that counsel rendered deficient performance for failing to obtain the records.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

                        _____

                        NORMA McGEE OGLE, JUDGE